## Sharon Herald Company, Appellant, *v.* Mercer County.

Argued April 14, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*C. E. Brockway,* with him *Leo H. McKay,* of *Brockway, Whitla & McKay,* for appellant.

*B. H. Marks,* for appellee.

OPINION BY CUNNINGHAM, J., July 15, 1938:

By the applicable portion of section 364 of Article IV of the "General County Law" of May 2, 1929, P. L. 1278, 1326, as amended July 18, 1935, P. L. 1184, (16 PS §364), it is provided: "The county auditors shall publish the reports required of them to be made and filed in the court of common pleas. Said auditors' reports shall be prepared and placed in the printer's hands for publication within ten days after being filed in the court of common pleas, and shall be published once a week for three successive weeks, in at least two newspapers of the respective county, one of which papers shall be politically of a minority party. The expense of the publication of said reports shall be paid by the county."

Pursuant to this legislative requirement, the auditors of the County of Mercer delivered on January 6, 1936, to The Sharon Herald, a daily newspaper of general circulation in that county, for publication therein, the report compiled by them during the year 1935 of the receipts and disbursements of the county officers

during the fiscal year of 1934. This report was published in all of its daily editions on January 13th, 20th, and 27th, 1936' and occupied a "total space of 9,855 lines."

The controversy in this case arose out of the presentation by the plaintiff owner and publisher—The Sharon Herald Company—to the county commissioners of a bill for the publication at the rate of fifteen cents per line, or a total of $1,478.25. The commissioners, deeming the rate of fifteen cents per line to be unreasonable, refused payment of the bill, but conceded that a rate of ten cents per line would be reasonable and expressed their willingness to pay for the publication of the report at that rate.

Insisting it was legally entitled to receive fifteen cents per line, The Sharon Herald Company brought its suit against the county in December, 1936, for the above amount, with interest from February 27, 1936. The trial resulted in a verdict in favor of the plaintiff on May 13, 1937, in the amount of $1,057.65, i. e., for 9,855 lines at ten cents per line, with interest to that date. Plaintiff, having submitted a point for binding instructions, filed a motion for judgment in its favor, n. o. v., for the amount of its claim, and also filed a motion for a new trial. Both motions were denied by the trial judge, CHAMBERS, P. J. of the 53d Judicial District, specially presiding, and this appeal by the plaintiff from the judgment entered upon the verdict followed.

Two general questions are here involved: First, whether the trial judge erred in refusing appellant's point for binding instructions and subsequently denying its motion for judgment n. o. v.: Second, whether the court below erred in overruling appellant's motion for a new trial.

The first assignment is based upon the denial by the trial judge of appellant's motion for judgment in its

favor upon the whole record; the second charges error in refusing appellant's motion for a new trial; assignments three to eleven, inclusive, relate to alleged trial errors in admitting certain testimony over appellant's objection and in refusing to sustain its objections to evidence offered by the defendant county; they will be given consideration in connection with the question whether appellant is entitled to a new trial. The twelfth is predicated upon the refusal of appellant's second point for charge.

1. Addressing ourselves to the first general question —whether appellant was entitled, as a matter of law, to binding instruction for the amount of its claim— we shall indicate the basis, as we understand it, upon which it rests that contention.

Its second point read: "2. If you find that the plaintiff, The Sharon Herald, following its organization in May, 1935, fixed, established and adhered to the rate of fifteen cents per line for legal advertising of the nature of auditors' reports, then that rate would be the reasonable rate for which the plaintiff may recover in this case."

The reference to the *establishing* in 1935 by appellant of a rate of fifteen cents per line for legal advertising is to a matter not pleaded in its statement of claim, but appearing from evidence adduced by it at the trial. The Sharon Herald was the result of the consolidation in May, 1935, of two newspapers theretofore published in the City of Sharon—Sharon News-Telegraph and Sharon Herald—each of which had a circulation of approximately 7,000 copies. By reason of its circulation of about 14,000, resulting from the consolidation, and in view of the enactment of certain legislation in 1929, the new paper—The Sharon Herald—contended at the trial that, although each constituent paper had for a number of years been charging a rate of ten cents per line for the publication of legal advertisements, such as

the report in question, the consolidated paper was justi-fied in increasing that rate to fifteen cents per line. The words "fixed" and "established," as used in the point, were manifestly intended to tie appellant's proposition into the provisions of the "Newspaper Advertising Act" of May 16, 1929, P. L. 1784, (45 PS §§1-10).

In section 9 of that act the legislature declared its provisions were intended to constitute "a comprehensive statute, creating uniformity in the publication of legal notices," etc., and establishing "a uniform method for determining the cost of legal advertising and legal notices, where rates, circulation of the particular publication, size of columns or pages, ...... vary in newspapers of different localities in this commonwealth." A "legal advertisement," within the meaning of the act, includes a statement "required ...... by law ...... to be published, for a valuable consideration, in ...... a newspaper of general circulation." The portion of section 8 now material reads:

"All newspapers of general circulation, official newspapers, legal newspapers, and legal periodicals, accepting and publishing official and legal advertising, are hereby *required* to fix and *establish* rates and charges for *official, legal and all other kinds of advertising,* offered or accepted for publication, and such newspapers and periodicals shall *furnish,* on *demand,* to any person or persons having use for the same, detailed *schedules,* stating the rates and charges which shall be deemed to be in force and effect until changed or altered." (Italics supplied).

There was testimony by C. B. Lartz, appellant's business manager, that it published and distributed among advertisers on September 11, 1935, a "Rate Card" in which, under the heading "Reading Notices," appeared the following: "Legal advertising, per line ...... fifteen cents." The witness admitted, however, on cross-

examination that he did not know whether a copy of the rate card had been sent to the commissioners of the defendant county.

The contention of counsel for appellant, as stated in the language of their brief, is that the "effect" of the statute "is to create a contract implied in law to pay for legal advertising at the rate fixed in advance by the publisher; and that, in an action like the present one, the fixed or established rate determines and controls the reasonable value of the services sued for."

If appellant had averred in its statement of claim, and shown by competent evidence at the trial, that, as "required" by the statute, it had fixed and established "rates and charges" for legal advertising, there would be some force in the proposition that the delivery and acceptance of the report for publication, under those circumstances, would, place the parties in such relation to each other that the law would imply a contract upon the part of appellant to publish it and upon the part of the county to pay the) established rates and charges.

But that is not this case. The material averment of the statement relative to the ground upon which recovery was sought reads: "The plaintiff charged for the said publication or advertisement, and was entitled to receive from the said County of Mercer, defendant, therefor, at the rate of fifteen cents (15c) per line, ...... the said charge being *just, fair* and *reasonable* and the charge made for this kind of advertising." (Italics supplied).

When a controversy arose during the trial concerning the admissibility of appellant's "Rate Card," its counsel said: "It is not offered to show a contract, your Honor. It is offered to show an established or declared rate, for the purpose of showing that it was a reasonable rate." The card was admitted "for that purpose." Again, counsel for appellant distinctly

stated at page 93a of the record that their claim was "based on a quantum meruit for the reasonable price."

The case was submitted to the jury, without objection by counsel for appellant, upon the theory of a quantum meruit, the trial judge saying: "The burden is upon the Sharon Herald Company here to convince you that this rate of fifteen cents a line is a reasonable rate; because, while the auditors have the right to pick the publication, the payment of the bill is upon the county, as represented by the county commissioners, who are the managers of the business affairs of the county, and whose duty it is to pay the proper bills of the county. The commissioners, however, are not required to pay unreasonable bills; they have the right to see that the bills which they pay, as representatives of the county, are just and reasonable."

Newspapers are not public utilities subject to governmental control and supervision as to the reasonableness of their advertising rates. We agree with the learned trial judge that the primary purpose of the "Newspaper Advertising Act" was to prescribe uniform methods for computing advertising charges, the taxation of advertising expenses as a part of the costs in certain forms of litigation, and the prevention of discriminations against or preferences in favor of advertisers in the same general class. Clearly, it creates no statutory presumption that the rates established and published by a newspaper are reasonable. Yet, that is exactly what the trial judge was requested to charge by appellant's second point. When the reasonableness of a published advertising rate of a newspaper is questioned, the burden is still on the newspaper to show its reasonableness. The point was properly refused.

We think the only material bearing the admission of the "Rate Card" could properly have upon the fundamental issue in the case is that it tends to show

the rate charged in the bill presented to the county was not one hastily devised after the placing of the report with appellant for the purpose of taking advantage of the county, but was one established in good faith at a prior date and intended by appellant to be charged for all legal advertisements.

There is nothing on this record which would have justified the court below in holding as a matter of law that appellant was entitled to binding instructions. It follows that its motion for judgment, n. o. v., was properly denied.

2. The second question involved—whether appellant should have been granted a new trial—is more difficult. Appellant's third and fourth assignments are based upon the admission of testimony showing that in 1928— eight years prior to the publication of the report upon which the present action was based—the various newspapers published in Mercer County entered into an agreement to charge ten cents per line for the kind of legal advertising with which we are now concerned, and upon the admission in evidence of a "Rate Card," effective July 1, 1928, containing that rate.

When the witness Lartz, above mentioned, was on the stand, counsel for the county asked him this question: "Q. On July 1, 1928, your newspaper, the News-Telegraph, the Sharon Herald, the Greenville Record-Argus, the Grove City Reporter Herald, the Mercer Dispatch and Republican, the Greenville Progress, the Sandy Lake Breeze and the Farrell Sentinel entered into an agreement, did you not, to charge ten cents per line for all other legal advertising, except 'subpoenas in divorce and administrators' and executors' notices?' "

Over the objection of counsel for appellant that the question related to matters which were irrelevant and immaterial to the issue then before the court, in that the agreement proposed to be proven was too remote and the evidence already in showed the Sharon Herald

and the Sharon News-Telegraph had passed out of existence and their successor, the appellant, was not a party to the agreement, the trial judge directed the witness to answer the question. His answer was that such an agreement had been made, but by reason of repeated violations by some of the newspapers, had been abandoned long prior to the organization of The Sharon Herald Company. The "Rate Card" of 1928, was also admitted, as an exhibit for the county, over the protest of counsel for appellant.

The real issue at the trial of this case was whether a rate of fifteen cents per line for publishing the report in *January, 1936,* was a reasonable rate, having regard to the increased circulation of appellant's newspaper, the cost to it of machinery, paper, etc., the prevailing wage scales and the legislative declaration in the "Newspaper Advertising Act," supra, "that a newspaper is entitled to compensation for its readiness at all times to render an advertising service." That the parties recognized this as the issue is apparent from the examination (125a-134a) of F. W. Mosier, publisher of the Greenville Progress, the only newspaper of the "minority [political] party" in the county. The circulation of his paper was only 1450 copies, and the rate charged for printing the report in it was ten cents per line. This witness was properly permitted to express his opinion with respect to the comparative costs as between appellant and himself of rendering the advertising service out of which the controversy arose. But it by no means follows that the rate charged by appellant was unreasonable because that of the Greenville Progress was lower. His testimony showed that, aside from the fact that the circulation of his paper was only one tenth of appellant's, the conditions under which the service was rendered differed in many particulars.

When the controlling issue—the reasonableness of

appellant's rate under all the conditions materially affecting its business in January, 1936,—is kept in mind, we are unable to see how proof of the fact that eight years prior to that time all the newspapers then published in the county considered ten cents per line a reasonable price for printing the reports of county auditors, throws any light upon that issue. The problem, whether evidence of the price paid or rate charged in the community for similar services is admissible as showing the reasonable value of the services upon which a suit is based, is one of those perplexing questions of degree, the disposition of which must in the last analysis depend upon all the facts of the particular case. So far as disclosed by the record, none of the newspapers joining in the agreement had a circulation even half as large as the present circulation of appellant. No attempt was made to show their respective plant investments, the prevailing prices of supplies, or the wage scales then in force.

Evidence of the rates charged in previous years is irrelevant unless it is also shown the services were rendered under substantially the same conditions as those prevailing in 1936. Nor should such evidence be admitted if it raises collateral and confusing issues: Wigmore on Evidence (2nd ed. 1923) Vol. 1, Sec. 463, p. 847.

In our opinion, the matters shown by the evidence now under consideration occurred at a time so remote, and the services were rendered under conditions so obviously dissimilar, that the testimony referred to in the third and fourth assignments of error was irrelevant and immaterial. As it is apparent from the verdict that its admission may have been prejudicial to appellant, the overruling of its objections to its reception constituted reversible error.

The other assignments based upon the admission of similar testimony need not be considered in detail.

For the reasons above stated, we think any evidence of the rate paid by the county to any newspaper, other than the appellant company, prior to 1936 would be irrelevant and immaterial and therefore inadmissible.

During the trial a rather unsuccessful effort was made to prove by one of the auditors, J. H. Barnes, (102a-104a) that appellant had agreed, through one of its advertising solicitors, Paul Achre, at the time the report was delivered to it in 1936 that it would be printed for "the same price as before." The eighth assignment alleges error in admitting this testimony. It was properly admitted for what it was worth. When, as here, an action is based upon a quantum meruit, the defendant may show, if he can, an express contract to pay a specified price for the services rendered: *Guyon v. Schuylkill Forge Co.*, 276 Pa. 350, 120 A. 279.

The second, third, fourth, fifth, sixth and seventh assignments are sustained and the first, eighth, ninth, tenth, eleventh and twelfth overruled.

Judgment reversed with a venire.