## Original Vincent and Joseph, Inc., v. Triangle Publications, Inc., et al.

*Isadore Gottlieb*, for plaintiff.

*Harold E. Kohn*, and *Paxson, Kalish, Dilworth & Green*, for Triangle Publications, Inc.

*Thomas B. K. Ringe* and *Norman T. Hayes, Jr.*, for Bulletin Company, Inc.

Bok, P. J., June 20, 1950.—These are preliminary objections to a bill of complaint.

It seems to us that both parties have misconceived the underlying purpose of the Act of May 16, 1929, P. L. 1784, 45 PS §§1-10, known as the "Newspaper Advertising Act". Also, that this purpose was not directly in issue in the one case that has interpreted the act: Sharon Herald Company v. Mercer County, 132 Pa. Superior Ct. 245 (1938).

In section 10 it is provided:

"The provisions of this act, as far as they are the same as those of existing laws, *are intended as a continuation of such laws, and not as new enactments.*" (Italics supplied.)

Turning to the prior laws, we find several that bear on the question of rates.

In the Act of May 6, 1874, P. L. 309, sec. 1, 45 PS §31, Commonwealth advertising "shall be chargeable only at the rates charged to other advertisers who advertise in the ordinary advertising columns of such papers."

In the Act of April 5, 1855, P. L. 162, sec. 1, 45 PS §35, the publication of Philadelphia legal notices carries this proviso: "That the charge for such publication shall not be greater than the usual rates charged by such newspaper."

In the Act of May 13, 1901, P. L. 190, sec. 1, 45 PS §37, it is provided that in counties with more than a million persons: "daily newspapers publishing legal advertisements shall establish a uniform rate for all classes of legal advertising, which shall in no case exceed the regular commercial rate of such daily newspapers."

The "Newspaper Advertising Act", now before us, begins:

"The laws concerning newspapers and relating to official publications, legal advertising, and legal notices in this Commonwealth are hereby codified, revised, amended, and consolidated. . . ."

The intention of this act, expressed in section 9, is, among other things:

"to establish a uniform method for determining the cost of legal advertising and legal notices, where rates, circulation of the particular publication, size of columns or pages, and kind or size of type used vary, in newspapers of different localities. . . ."

The title of this act is:

"An Act concerning newspapers; creating uniformity in the publication of legal notices and advertisements; defining the newspapers in which official and legal advertising shall be published; prescribing methods for computing the charges therefor, and providing that the expenses for publishing legal advertising or notices shall be taxable and collectible as court costs are now taxed and collected in all matters and proceedings."

Advertising is defined by section 3 (18) of the act, 45 PS §3 (18). It "means a printed public notice, relating to any matter, authorized by any person, corporation, or association, which is published for a valuable consideration, in either a newspaper, legal newspaper, legal periodical, official newspaper, official legal newspaper, official legal periodical, magazine or periodical, *and* which may be required by law, rule, order, or decree of court, or resolution of any corporation, or unincorporated association, or by ordinance of any municipality, or subdivision thereof, or by any State board, commission, board of education, township, borough, city, or county commissioners, or any public officer." (Italics supplied.)

Newspapers are not public utilities and their charges are not subject to governmental control: Sharon Herald Company v. Mercer County, supra, at p. 251. The necessity inherent in the State's legal system to advertise certain proceedings being obvious, there can

be no doubt that the legislature may act against discrimination and in favor of uniformity.

It is clear to us that the act in question seeks to protect legal and official advertising by using a newspaper's other advertising as a yardstick to prevent discrimination against legal and official advertisers in the matter of rates. A careful reading of the act will show that its provisions would not cover a newspaper that carried no legal or official advertising. It would clearly be unconstitutional if it did, since the title gives no basis for any such construction.

With this in mind, section 8 has no ambiguity. It reads:

"All newspapers of general circulation, official newspapers, legal newspapers, and legal periodicals, accepting and publishing official and legal advertising, are hereby required to fix and establish rates and charges for official, legal and all other kinds of advertising, offered or accepted for publication, and such newspapers and periodicals shall furnish, on demand, to any person or persons having use for the same, detailed schedules, stating the rates and charges which shall be deemed to be in force and effect until changed or altered, and, when changed or altered, such newspaper or periodical shall give the person, persons, corporation, association, municipality or municipalities, or public officers, authorized or required to publish advertising, before demanding or receiving compensation at any increased rate, notice that the rates and charges of such newspaper or periodical or advertising have been changed or abrogated, and that increased advertising rates and charges have been established or fixed."

Analyzing this section, it appears that:

1. All newspapers (including legals and officials) that take legal and official advertising shall fix rates

for such advertising and for general advertising as well.

2. Such newspapers shall furnish rate schedules of all kinds of advertising to anyone having use for them.

3. When the rates are changed, notice of higher rates shall be given to those persons *authorized or required to publish advertising,* i.e. legal or official advertisers. The emphasized words are used, apparently, to cover the variety of required matters ranging from divorce notices, advertisements for bids, and corporate resolutions or financial announcements whose appearance is legally compelled.

A distinction between public and private advertising—or legal and commercial—is suggested.

It therefore becomes apparent that legal, or public, advertisers are entitled to notice of increased rates, and to make such notice intelligible, the private or commercial rates must be given for comparison. This affords protection against the temptation on the part of an unscrupulous publisher to jink the legal advertiser, who is compelled to advertise and has therefore no bargaining power. It is a case of government protecting itself and those whom it compels to advertise.

At least a byproduct of the act's purpose might be to give some measure of protection to the newspapers against political pressure to accept lower rates for legal notices.

Plaintiff calls attention to such definitions as "display advertising" (item 29 of the act's section 1, 45 PS §3), and contends that such a thing must refer to private or commercial advertising and hence the act is in effect a rate-control for all advertising. The phrase quoted does not appear anywhere in the body of the act, but it does appear in the Act of 1874, cited supra, and this strengthens the notion that the instant

act is a continuation of past legislative policy, just as it says it is.

Plaintiff also points to the clause in section 8, "fix and establish rates and charges for official, legal and all other kinds of advertising", and argues again that the act thereby seeks to control general advertising rates. This has been answered above: The other kinds of advertising form the yardstick by which to measure the uniformity of the rates for legal and official advertising.

Plaintiff is consequently not within the coverage of the act and has no standing to sue. It owns a chain of eight beauty shops, two of which, specially located, have been charged a higher advertising rate by defendant publishers than the other six. The bill is to restrain the disparity and compel defendants to charge no more than the lower rate.

Since the act has nothing whatever to do with plaintiff, the bill must fail completely.

The preliminary objections are sustained, and judgment is entered for defendants.